Filed 3/30/26  P. v. Salinas CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B346284 |
| Plaintiff and Respondent, | Los Angeles County |
| | Super. Ct. No. |
| v. | 24SFCF00467 |
| VINCENT SALINAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. LaForteza and Kevin S. Rosenberg, Judges.  Affirmed.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Vincent Salinas appeals from his judgment of conviction after he entered into a plea agreement with the People. Two judges had denied Salinas's motion for pretrial mental health diversion under Penal Code section 1001.36.[1] Salinas's counsel has asked us independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We affirm.

## BACKGROUND[2]

On the afternoon of March 30, 2024, Sergio Victoria and his uncle Andres drove to the parking lot of Crunch Fitness. Sergio had parked his van there overnight. Sergio saw a white Camry next to the van. The driver of the Camry got out and started trying to open the door of Sergio's van with some sort of object. Sergio approached the man, walking "a little fast" and using his cell phone to record. The passenger in the Camry—later identified as Salinas—pointed a gun at Sergio, directly at Sergio's chest. Sergio was "very afraid." The driver of the Camry got back into the car and "tried to run [Sergio and Andres] over."

Sergio "moved to one side." At the preliminary hearing, Sergio demonstrated how he had crouched down. Sergio was within three feet of the Camry as it tried to run him over. The Camry drove away.

Salinas was arrested two days later. When he was arrested, officers found a semi-automatic firearm (with bullets in the magazine but none in the chamber). It had no serial number. Post-*Miranda,*[3] Salinas told the officers he'd found

---

[1]     References to statutes are to the Penal Code.

[2]     We take our facts from the transcript of the preliminary hearing and the police report. (See § 1001.36, subd. (b)(2).)

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

2

the gun and had it for a couple of weeks.  He said he'd been sitting in a car with a friend.  When the victim "began to run towards his door," he panicked, "pointed the gun at [the victim] (to scare him)," but "wasn't going to shoot him."

The People charged Salinas with two counts of possession of a firearm by a felon (counts 1 and 3, committed on March 30 and April 1, respectively), assault with a semiautomatic firearm (count 2), unlawful possession of ammunition (count 4), and carrying a loaded, unregistered handgun on his person or in a vehicle while in a public place (count 5).  The People alleged Salinas previously had been convicted of four felonies, including felony child abuse and narcotics/weapons charges.  The People also alleged six aggravating factors under the California Rules of Court.

On August 1, 2024, Salinas filed a motion for pretrial mental health diversion.  Salinas submitted a report by Dr. Emin Gharibian, a forensic psychologist.  Dr. Gharibian's "diagnostic impressions" of Salinas were "stimulant use disorder, amphetamine type substance, severe" and "cannabis use disorder, severe."  Salinas told the doctor he had been unable "to stop using methamphetamine or marijuana for any meaningful period of time over the past 20 years."  However, Salinas also reported "that he never felt like he was addicted to marijuana or had any problems associated with using it but did admit to heavily using it at times."  The doctor's report stated Salinas told him "[t]he last time he used methamphetamine was the day he got arrested."  The report did not say that Salinas was under the influence of either methamphetamine or marijuana when he pointed a gun at Sergio two days earlier.  Dr. Gharibian's report did not offer any opinion as to whether Salinas's disorders were

"a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).)

Salinas had "never sought treatment." He had been required to attend a "mental health treatment program" for an earlier case but had "not complete[d] the program and had to serve six months in jail." Dr. Gharibian stated treatment for Salinas would require an intensive residential program that used "evidence-based treatments." The doctor listed five such programs: Tarzana Treatment Center, L.A. CADA, River Community, Exodus Recovery, and Cri-Help. He recommended the program "accommodate [Salinas] for at least 9 to 12 months."

Salinas apparently did not seek (or gain) admission to any of these programs. Instead, he attached to his motion a three-paragraph letter from the San Fernando Recovery Center. The center's intake coordinator stated they offered residential programs with "durations" of 30–120 days.

The parties appeared before the court (the Honorable Bernie C. LaForteza) on August 26, 2024.[4] The prosecutor objected to Salinas's motion for diversion. He argued there was no "connection between [Salinas's] substance use disorder and [his] conduct in this case." Referring to the police report, the prosecutor noted Salinas told officers "that basically he acted in self-defense," and there was "no mention of him being intoxicated due to any narcotics at all in any of the reports." So, the prosecutor continued, "from the defendant's own mouth we get the fact that . . . his drug abuse was not a significant factor in the commission of the crime."

---

[4] The preliminary hearing had not yet taken place. The prosecution did not file a written opposition to Salinas's motion.

4

The prosecutor also asserted Salinas was not suitable for diversion because the "treatment plan as proposed by the defense [was] insufficient, and therefore the defendant will pose an unreasonable risk of danger to public safety as defined in section 1170.18 if treated in the community." The prosecutor referred to Salinas's criminal history, noting he had 11 failures to appear. The court stated it intended to do further research and ordered the parties back for September 9, 2024.

On September 9, the court denied Salinas's motion. The court found Salinas was not eligible for diversion because the prosecution had presented "compelling evidence that rebuts the presumption of a nexus between the mental illness and the underlying crime." The police report, the court continued, demonstrated Salinas committed the crime "due to panic," an "immediate response to a specific situation," and not as a result of his substance abuse disorder.

The parties again appeared before the court (the Honorable Kevin S. Rosenberg) on April 2, 2025 for a pretrial conference. Salinas had filed, on February 27, 2025, a supplemental motion for diversion. The supplemental motion was essentially the same as the August 2024 motion, with the addition of two case citations. Salinas's counsel argued the testimony at the preliminary hearing had made "clear that any claim to self-defense" was "not" "viable." Counsel continued, "[T]he only reasonable explanation for Mr. Salinas's statements on the day of his arrest can only be alluded to [*sic*] substance abuse and paranoia and delusion that comes from using substances, specifically, in this case, methamphetamine."[5]

---

[5] Counsel did not cite any evidence for her assertion that Salinas suffered from "paranoia and delusion[s]," nor have we

The prosecutor objected to reconsideration of Judge LaForteza's ruling. Again raising the "nexus" issue, counsel argued, "The defendant was part of a crew that appeared to be stealing a van and when confronted by the victims as they were getting away, the defendant from the front passenger seat of the getaway vehicle, pointed that semi-automatic handgun at the victims in an effort to get away." The prosecutor also asserted it was "clear from the recommendation from the psychologist that the program is grossly inadequate."

After hearing at length from both the prosecutor and defense counsel, the court denied Salinas's motion for diversion. The court stated, "[T]here isn't a basis for me to revisit Judge LaForteza's ruling. He made his ruling, and I think, frankly, it's legally correct." The court continued that, in addition, it "would independently find that, assuming Mr. Salinas has shown eligibility, he's not suitable based on the information that has been provided to me about the program as it relates to what the doctor says." The court previously had noted, "[T]he doctor in the report recommends a 9- to 12-month treatment program. [¶] The program that's proposed is less than half of that. So what I saw is a proposed program that does not meet Mr. Salinas's treatment needs as articulated by the doctor

---

located any in the record. Dr. Gharibian stated in his report that Salinas's "thinking was linear, logical, and easy to follow. There was no evidence of confused, illogical, or delusional thinking. He did not report a history of auditory or visual hallucinations . . . . He spoke clearly with an average pace and volume. There were no overt impairments in short- or long-term memory, attention, or concentration. He presented with good insight into his struggles with substance abuse."

whose report is attached to the motion. [¶] So even assuming he's eligible, it wouldn't appear to me he's suitable based on this."

The case proceeded to trial in April 2025. Salinas entered into a last-minute plea agreement with the People. Salinas pleaded no contest to count 2, assault with a semiautomatic firearm, and admitted one aggravating factor. In accordance with the agreement, the court sentenced Salinas to the upper term of nine years in the state prison.[6]

Salinas filed a notice of appeal and requested a certificate of probable cause. The court denied the request. Accordingly, on May 29, 2025, the Administrative Presiding Justice of this court issued an order limiting Salinas's appeal "to issues that do not require a Certificate of Probable Cause."

We appointed counsel to represent Salinas on appeal. After "review[ing] the entire record on appeal," counsel filed an opening brief requesting that this court "independently review the entire record on appeal for arguable issues" under *Wende, supra,* 25 Cal.3d 436. Counsel declared an attorney at the California Appellate Project also had reviewed the case. Counsel stated she had sent copies of the transcripts of the record and of her brief to Salinas, and had informed him of his right to file a supplemental brief within 30 days. This court also sent a letter on November 5, 2025. We have not received a supplemental brief from Salinas.

In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for certain defendants with mental health disorders. (Stats. 2018, ch. 34,

---

[6]     The prosecution repeatedly offered Salinas the midterm of six years. At a final pretrial conference, it offered five years. Salinas rejected all of those offers.

§ 24. See *People v. Frahs* (2020) 9 Cal.5th 618, 624.) Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).)

Under section 1001.36, subdivision (b), a defendant is " 'eligible' " for mental health diversion if he has been diagnosed with a qualifying mental disorder and the disorder was " 'a significant factor in the commission of the charged offense.' " (*People v. Riddle* (2025) 115 Cal.App.5th 445, 450 (*Riddle*); § 1001.36, subd. (b).) A defendant is " 'suitable' " for diversion if the " 'defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment' "; the defendant consents to diversion, waives his speedy trial rights, and " 'agrees to comply with treatment as a condition of diversion' "; and the defendant " 'will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' " (*Riddle*, at p. 450; § 1001.36, subd. (c).) Under section 1170.18, subdivision (c), an " ' "unreasonable risk of danger to public safety" means an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667.' " (*Riddle*, at p. 450.)

"Over the years since the statute's original enactment, appellate courts have recognized section 1001.36 provides the trial court with discretion to deny diversion even if it finds a defendant meets the statutory eligibility and suitability criteria." (*People v. Cabalar* (2025) 117 Cal.App.5th 41, 53 (citing cases); see also *Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) The court

must exercise this residual discretion consistent with the principles and purpose of the governing law. (*Cabalar*, at pp. 53–54.) A court may deny diversion when the defendant is not able to obtain the residential treatment that the court has determined is a necessary condition for diversion. (Cf. *Riddle*, *supra*, 115 Cal.App.5th at p. 451 [court did not err in terminating diversion where there was no recommended inpatient treatment provider that would " 'meet the specialized mental health treatment needs of the defendant,' " quoting § 1001.36, subd. (f)(1)(A)(i)].) We review a trial court's ruling on a request for mental health diversion for abuse of discretion and its factual findings for substantial evidence. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448–449.)

We have independently reviewed the record and find no arguable issues. We are satisfied that appellant's counsel has fully complied with her responsibilities and that no arguable issues exist. (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110; *Wende, supra,* 25 Cal.3d at p. 441.)

**DISPOSITION**

We affirm Vincent Salinas's judgment of conviction.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, Acting P. J.

We concur:



ADAMS, J.



HANASONO, J.